# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-4107

THE OSLER INSTITUTE, INC.,

*Plaintiff-Appellant,*

v.

LOIS FORDE,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. TH01-0019-C-M/H—**Larry J. McKinney**, *Chief Judge.*

_____

ARGUED SEPTEMBER 13, 2004—DECIDED OCTOBER 13, 2004

_____


Before BAUER, RIPPLE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* The Osler Institute, Inc. appeals
from an order granting its former employee, Lois Forde, at-
torney fees following her successful defense to this lawsuit.

In considering the merits of this case in *Osler Institute,
Inc. v. Forde*, 333 F.3d 832 (7th Cir. 2003), we set out the facts
in some detail; our recitation here will be brief. The Osler
Institute, headquartered in Indiana, is a test preparation
company which runs 60 to 70 seminars a year to help doc-
tors prepare for medical board examinations. In 1995, Osler
hired Lois Forde on a part-time basis to coordinate some of
its seminars. Forde and Osler parted ways in 2000 and she

began working for PsyPrep, a new psychiatry board prepara-tion company run by former Osler lecturers. Unhappy about Forde's new employment, Osler turned to its employment agreement with Forde, which contained a noncompetition clause. Osler sent Forde a copy of the agreement and a draft of a complaint it said it was contemplating filing in federal court. Faced with a federal lawsuit, Forde promptly re-signed from PsyPrep. Her resignation did not save her from the lawsuit, however. Osler filed its complaint in the United States District Court for the Southern District of Indiana, setting out four claims: that Forde breached the employ-ment agreement's noncompetition clause; that she breached her fiduciary duty to the company; that she interfered with Osler's relationship with its lecturers; and finally that she slandered Osler's founder.

The district judge granted summary judgment for Forde—*sua sponte* (we discussed this wrinkle in our previous deci-sion)—and Osler appealed, taking issue primarily with the dismissal of its claim based on the noncompetition clause. We affirmed the dismissal.

We now arrive at the current controversy. In addition to the noncompetition clause, the employment contract con-tained a provision providing for attorney fees to the pre-vailing party. Under that provision, Forde sought and was granted attorney fees of almost $55,000. Osler appeals the fee award, contending that the employment contract was found to be void and therefore, for various reasons, the attorney-fees provision cannot be used to support an award of fees. The argument is, in effect, that Forde prevailed too thoroughly and cannot now recover her fees.

It is uncontested that Indiana law provides the basis for decision. Indiana adheres to the American rule, under which, in the absence of a statutory provision or an agreement providing for fees, each party is required to pay its own at-torney fees. *Willie's Construction Co. v. Baker*, 596 N.E.2d

958 (Ind. App. 1992). When a contract exists allowing for the recovery of attorney fees, the provision will be enforced according to its terms unless it violates public policy. *Harrison v. Thomas*, 761 N.E.2d 816 (Ind. 2002).

Under Indiana law, as Osler points out, a partially illegal contract is wholly unenforceable unless the illegal provisions can be eliminated without frustrating the contract's basic purpose. *Harbour v. Arelco, Inc.*, 678 N.E.2d 381 (Ind. 1997). On this point, Osler is correct on the law but wrong in its application. First of all, neither this court nor the district court found the noncompetition provision to be per se illegal. What Osler failed to show in this case is that it had a protectable interest in Forde's future employment. Forde did not have access to protectable or confidential information; rather, her duties at Osler were administrative and organizational. Those duties, as they developed at Osler, were not of the type to which noncompetition agreements can apply. For that reason, the provision was described as void as applied to her. The decisions said nothing at all about the legality of the clause were it applied to someone in whom Osler had a protectable interest. It is entirely possible that at the time the contract was entered into, both Osler and Forde may have had reason to think that her employment would be of the type in which Osler would have a protectable interest. Osler says as much in its brief when it says that the agreement was "prepared for one basic purpose—to protect Osler's business by discouraging Forde from unfairly exploiting the unique competitive advantage she was *forecasted to gain from her association with the company*." (Emphasis added.) As it turned out, she did not gain that unique competitive advantage, a fact she established to the satisfaction of both the district court and this court. Having prevailed by showing the noncompetition clause could not apply to her, she is entitled to her attorney fees under the contract.

Even were we to decide that somehow the prior decisions had found the contract to be illegal, we would still not be

convinced that the attorney fees provision would be unenforceable. The contract contains a severability clause which provides that invalidity or unenforceability of "any term or provision, or any clause or portion thereof of this agreement shall in no way impair or affect the validity of enforceability of any other provisions . . . ." Despite that clause, Osler argues that the contract has been gutted and that therefore the contract's severability clause is not enough to save a "moribund contract." Although it acknowledges that Indiana courts have not decided what effect a severability clause has, Osler nevertheless says that a severability clause should not save a provision when the essential purpose of the contract has been undermined.

We need not predict what Indiana courts would decide regarding severability clauses. Even if Osler is right, the argument cannot carry the day. While we agree that the noncompetition provision is an important aspect of the contract, we are not convinced that it alone is the essential purpose. In addition to the noncompetition clause, the contract has other significant provisions. It entitles Forde to participate in pension, profit-sharing, medical or dental plans; to group term life insurance; to educational opportunities; to paid vacations and other benefits. It provides that the corporation will provide reimbursement for business expenses. The final clause of the contract sets out a requirement for drug testing and for summary dismissal of an employee for using illegal drugs and several other infractions, including the falsification of a work record, violation of the nonsmoking policy, and insubordination. Surely these provisions are sufficiently significant to survive even in the absence of the noncompetition provision.

Furthermore, we are not convinced that the attorney-fees provision is somehow a poor cousin to the rest of the contract. The clause states:

> 5. ATTORNEY'S FEES: In the event any action is commenced by the Associate or the Corporation against the other and related in any way to Associate's employment

> by the Corporation, the prevailing party shall be reimbursed by the other party for the prevailing party's reasonable attorney fees incurred therein.

The clause provides a significant benefit to either party and is not limited to an award of fees for actions on the contract. The present action involved four separate claims against Forde, all involving her employment. The fact that she won by convincing us that she did not qualify for coverage under the noncompetition clause surely cannot mean that she loses the benefit of the sweeping attorney fees provision. We AFFIRM the district court's award of attorney fees.

A true Copy:

    Teste:

                               _____
                               *Clerk of the United States Court of Appeals for the Seventh Circuit*